PD-0930-14

PD-0930&0931&0932-14

CLERK FOR THE
COURT OF CRIMINAL APPEALS
OF TEXAS

Mark David Simmons.
Petitioner

vs

State of Texas.
Appellee

COA NOS : 03-12-00278-CR
through 00280-CR.

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 27 2015

Abel Acosta, Clerk

Honorable Mr. Abel Acosta,

Enclosed is my attempt to create a P.D.R. acceptable to the COURT. I realize the 11.07 is due soon, but if someone will consider reading the P.D.R. the extra-ordinary circumstances might be of interest, I pray ... (I was pro se in over 20 pretrial hearings, over 200 motions, and 9 days of trial...) I cannot afford the record of some 3400 pages. Please consider the P.D.R. sir.

Respectfully Yours,

Mark Simmons
810 FM 2821    #1775527
Huntsville, Tx.
77349
Wynne Unit

04/16/2015.

# COURT OF CRIMINAL APPEALS
## OF TEXAS.

Mark David Simmons.
Petitioner.

vs.

The State of Texas.
Appellee.

COA NOS. 03-12-00278-CR

through 00280.

## DECLARATION OF MARK SIMMONS

I swear these things under penalty of perjury in accord with 28 U.S.C. 1746 and all the laws of the State of Texas:

1. I am 56 years old and of sound mind.

2. Everything I have stated in the Petition For Discretionary Review is true and correct to the best of my knowledge.

3. I was pro se at trial and pre-trial and have personal knowledge of everything in the Petition for Discretionary Review now before the Court.

4. I have been totally indigent since July of 2010 and cannot purchase the clerk's or reporter's records.

I swear these things are true under 28 U.S.C. 1746 and all Texas laws against perjury.

Executed On : 4/16/2015

Declarant : Mark David Simmons

PD - 0930-14

COURT OF CRIMINAL
APPEALS OF TEXAS.

Court of Appeals Nos. : 03-12-00278-CR
through 00280.

Mark David Simmons
Petitioner

vs

The State of Texas
Appellee.

Certificate of Service

I here attest that the prosecution in this cause has been sent a copy of the petition for discretionary review by United States mail.

4/22/2015

Mark David Simmons

Mark Simmons
810 FM 2821
Huntsville Texas
77349

Prisoner number 1775527.

# Court of Criminal Appeals
## of Texas

Mark David Simmons
    Petitioner
    vs
The State of Texs.

Court of Appeals Nos. 03-12-00278-CR through 00280.

## Motion To Suspend Rule 9.3 (Tx. R. App. Proc.)

Comes now the petitioner pro se in the above entitled cause to move this Honorable Court to suspend Rule 9.3 (Number of Copies) Texas Rules of Appellate Procedure, and shown for cause is as follows:

1. The Wynne Unit of the Texas Prison System only allows indigent prisoners a maximum of 25 sheets of paper for all legal needs per week. This includes all research notes and rough drafts.

2. The petitioner has been totally indigent since July of 2010 and cannot buy any additional paper.

Therefore, premisis considered, petitioner moves the COURT show mercy, and grant this motion for all petitions requiring copies that are required by this merciful Court.

Respectfully Submitted,

Mark David Simmons

April 16th, 2015.

PD-0930-14.

4/14/2015.

Most Honorable Clerk,

I was pro se in a trial

over 200 motions were heard over

20 pretrial hearings and nine days

of jury trial. All my records

were seized on the first day of the

prison term and I have been indigent

and completely unable to acquire the

record of over 3000 pages.

Please forgive this out of time

P.D.R. as the prison allows 25

sheets of paper per week and the

11.07 is due soon . . . I hope

you'll allow some mercy under

the circumstances. I've worked very

hard on the P.D.R. . . .

Respectfully Yours,

Mark David Simmons

RECEIVED IN
COURT OF CRIMINAL APPEALS
APR 27 2015
Abel Acosta, Clerk

Mark David Simmons
810 Fm 2821    No.
Huntsville, Texas.    1775527
77349.

4/14/2015

1 of 1

COURT OF CRIMINAL Appeals of Texas

No. PD-0930-14

Mark David Simmons, Petitioner,

v

The State of Texas, Appellee.

From: the Texas Court of Appeals
Third District, At Austin.

No. 03-12-00278-CR
No. 03-12-00279-CR
No. 03-12-00280-CR.

PETITION FOR DISCRETIONARY REVIEW

Comes Now petitioner pro se and moves this COURT to grant this hearing of petition for discretionary review given the former pro se defendant is working without the record because of indigency, and the record is over 3000 pages with over 200 motions and 9 days of jury trial. All defendant's records were seized and destroyed by the state prison. Therefore petitioner seeks the Courts patients and mercy in hearing this Petition.

Respectfully Submitted,

Executed On: 04/14/2015.

M. David Simmons

# Table of Contents

1. Index of Authorities . . . 1-A and 2-A.

2. Statement Regarding Oral Argument ... 3A.

3. Statement of the Case . . . . 4A.

4. Statement of Procedural History ... 5A.

5. Questions Presented for Review . . . 1-3.

6. Argument . . . 4-15.

7. Prayer for Relief . . . 15.

8. Appendix . . . Copy of Opinion is not available to the petitioner at this time.

# Table of Contents

## Subject Matter of Questions Presented for Review

1. Obstructed testimony and effective counsel on appeal.

2. Effective appellate counsel and criminal misconduct behind color of law.

3. Recusal for conflict of interest in federal court and prejudicial actions.

4. Delay of proceedings (criminal) until after federal bias subsides vs. clearly retaliatory acts purposed to benefit His Honor in federal litigation with his criminal defendant.

5. Obstruction of testimony, the rendering of witnesses "unavailable" by purposed design, and Constitutional compulsory process rights.

6. Evidence tampering, destruction, and non-disclosure.

7. Witness intimidation, structural error, privilege and due process.

# INDEX OF AUTHORITIES

1. California v. Trambetta, 467 U.S. 479 (1984), Cited on pages: 14.

2. Chambers v. Mississippi, 410 U.S. 302, 93 S.Ct. 1049 (1973). Cited on pages: 11.

3. Coleman v. State, 966 S.W. 2d 525, 527-28 (Tex. Crim. App. 1998). Cited on pages: 12.

4. Crane v. Kentucky, 476 U.S. 683 (1986). Cited on: 14.

5. Evitts v. Lucey, 469 U.S. 387, 396, 105 S.Ct. 830, 836 (1985). Cited on: 4.

6. Gilmore v. Taylor, 508 U.S. 333-34 (1993). Cited on pages: 14.

7. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). Cited on: 4.

8. U.S. v. Herrera, 600 F. 2d 502, 505 (5th Cir. 1979) Cited on pages: 7.

9. U.S. v. McClure, 546 F. 2d 673 (5th Cir. 1977) Cited on pages: 12.

# Index of Authorities

10. Washington v. Texas, 388 U.S. 19, 87 S. Ct. 1923 (1967). Cited on pages: 11.

11. Webb v. Texas, 409 U.S. 96, 93 S. Ct. 353 (1972). Cited on pages: 12.

Note: All paragraphs are numbered in the argument.

2-A.

## Statement of the Case

Defendant Simmons was pro se in all proceedings, except appeal. The defensive theory was a hybrid in which elements of Entrapment and Duress combined with Self Defense and Sanity were in issue. The cause spans six-years in which two old friends of some twenty-five years came under a deliberate and sustained campaign of government harassment, from which relief was sought from state and federal authorities — countless times... Yet none was ever given them... This allmost-daily harassment went on for so many years and at an intensity that rendered both men irrational, paranoid and delusional. These men were the "accused and the deceased". Thirty-four witnesses were obstructed from giving testimony to the jury. The obstruction destroyed all hope of a fair trial. It reflected badly on the judicial process.

## Statement Regarding Oral Argument

Petitioner respectfully requests the opportunity to be heard, so the Court may weigh his intent, honesty, and credibility in the interests of justice.

3A, 4A.

# Statement of Procedural History

1. Date of conviction . . . . April 9, 2012.

2. Judgment Rendered By Texas Court of Appeals . . . . June 3, 2014.

3. From the District Court of Hays County, 22nd Judicial District NOS. CR-10-0799, CR-10-0802, & CR-10-0832, Honorable William Henry, Judge Presiding.

4. Court of Criminal Appeals number PD-0930-14.

# Questions Presented For Review

1. Was it error for appellate counsel (R. Jones) to fail to inform this CouRT that the "mid-trial suprise witness-quashings" he presents as his primary appellate ground, did in fact take place months prior to this trial when Mr. Jones, acting as court appointed advisor to the pro se defendant (M. Simmons) was actually ordered by Judge (B. Henry) to "hold all subpoenas for the defense and not serve them until further notice"? (There were "thirty-four" subpoenas on file by Simmons, and the order to hold remained in effect until after trial began.)

2. Was it error to offer these "suprise-quashings" as Jones' main ground while simultaneously acknowledging his duty to show prejudice, and then to neither consult Simmons to "find out" what the prejudice was nor even attempt to argue the main ground with "any showing" of prejudice? (This, in the light of Jones' deliberate obstruction of all defense witnesses until after trial began.)

3. Was it error for Judge Henry to refuse to disqualify while personally engaged in months of federal civil litigation with his pro se criminal defendant (M. Simmons), during active criminal proceedings as his criminal judge?

# Questions Presented for Review

4. Is it error for Judge Henry to refuse to "delay" Simmons' criminal proceedings during his Honor's civil proceedings, in-which he clearly had a conflict of interests while hearing multiple motions and making severely prejudicial decisions affecting outcomes in both courts, so as to destroy Simmons' criminal defense while benefitting his Honors' own civil interests?

5. Is it error for Judge Henry to order all subpoenas for the defense obstructed indefinitely, when he "knew" that his actions would guarantee Simmons' out of state (indispensable) witnesses would thereby be "rendered" "unavailable for trial"?

6. Is it error to allow over twenty months of well-supported and continuous evidence tampering, non-disclosure and destruction, evidence fabrication, witness intimidation, abuse and threats of violence against Simmons from sheriff's deputies, attorney-client privilege violations etc... to go unheard by the Court in a trial like this?

## Questions Presented for Review

7. Simmons had independently acquired a forensic psychiatrist (Dr. R. Cantu), and had employed him as the psychiatric expert to independently analyze a large audio-tape diary made near the time of the crimes charged, by Simmons. This analysis was to accurately determine Simmons' state of mind at the time, by useing the best available evidence.

Was it error for Judge Henry to obstruct the analysis by intimidation, when he ordered Dr. Cantu to not only abandon the defense he was contractually obligated to, but to then work exclusively for the Court — leaving Simmons without an expert witness while attempting to bring the affirmative defense of insanity and duress with a jury that was so instructed?

# Argument.

I. 'The defendant in a criminal trial is also guaranteed effective counsel on first appeal. EVITTS v. LUCEY. To prove otherwise it must be shown that due to counsel's deficient performance the error fell well beneath objective standards of reasonableness and but for this, the proceedings would probably have been different.' STRICKLAND v. WASHINGTON.

2 Prosecutor (S. Tibbe) is well-aware that appellate counsel (R. Jones) has a personal criminal history. In the state of Georgia Mr. Jones lost his licence to practice law for embezzlement regarding the trust funds of his clients. And, this awareness gives Ms. Tibbe and Judge Henry considerable leverage over Jones.

3 Jones knew he had a duty to consult with pro se defendant Simmons in order to discover the defensive value of the quashed witnesses he raises as his primary appellate ground. Jones states that Judge Henry "did not know" why Simmons needed the quashed witnesses he had agreed to allow months prior... But Jones does not tell the COURT that after the verdict, he never contacted Simmons again... So, he had no knowledge of why the quashed witnesses were needed, with which to demonstrate prejudice, yet had a duty to "find out".

# Argument

I.

[4] Jones deliberately "misleads" this COURT by raising the mid-trial "surprise" witness quashings because Jones was ordered by the judge to withold service of (all) subpoenas nearly four months before trial. And this order to obstruct was in effect until the third day of the trial. Jones is "aware" because he personally obstructed all thirty-four subpoenas from being served until the trial began.

[5] Mr. Jones deliberately fails to argue this appeal as a delaying tactic. He knows he destroyed the defense by his obstruction, just as he was told to do. He's aware, just as Judge Henry is, that their deliberate obstruction of all defensive testimony until trial began, guaranteed the out of state witnesses would be rendered "unavailable to testify" — as it would most of the others. Mr. Jones, acting on the direct orders of Judge Henry, is the officer of the court that stopped the service of all subpoenas for the defense, while acting as the defense advisor — court appointed to advise pro se defendant Mark Simmons.

## Argument

I.

"Mr. Jones diligently worked to undermine Simmons' investigator and server (S. Wells), as Jones was the court-appointed advisor to the defense. Jones would not pay Miss Wells any of the draws he had agreed to, after she had done the work. Judge Henry had given Jones control over all the defense money for the indigent pro se defendant, Simmons. But he never paid "anybody" until long after trial – if ever. .. Mr. Jones dismissed Miss Wells when her investigation began producing embarassing facts about prosecutor Tibbe and her first assistant Mr. Weber. These facts added to the fact that Tibbe's top investigator and supervisor of evidence (K. Ficke) had pled to felony evidence fabrication as an officer — caused Mr. Jones to dismiss Wells without Simmons consent. Once re-hired, the harassment, intimidation and non-payment caused Wells to abandon Simmons and send his "case file with strategy" to the Judge. Ms. Tibbe got the file, Jones got the subpoena control, and with the order to obstruct — Simmons watched helplessly as the defense was systematically destroyed by Jones simply waiting until trial to even try serving the subpoenas.

# Argument

## I.

[7] "Misconduct of this magnitude infected all criminal proceedings in this case. The precedence a case like this could set nationally was so disturbing to the Court that the primary attorney for the prosecutor (C. Compton) visited Mr. Simmons in his cell, and with the camera off — Ms. Compton looked at him and said " If we allow this case to be heard, the military will do to us what they did to you — I'm very sorry." **U.S. v. HERRERA**.

[8] From this visit on, the proceedings were an allmost intentional fiasco of em-barrassment to jurisprudence. It was an ironic, dark-hearted comedy of errors. The jury was removed twenty-seven times so as to instruct Simmons on what could not be discussed. Eventually all litigation had been forbidden.

It is impossible to clearly show this COURT the exculpatory value of each of the thirty-four obstructed witnesses, in a memo-randum with a fifteen page limit. But, not even Court approved and funded experts could take the stand because of the arbitrary bias of this district judge. (To tell this COURT otherwise is ~~clearly~~ perjury.)

# ARGUMENT

## II.

9 Mr. Simmons was pro se from magistration because no state lawyer would present the very controversial defense Simmons attempted to. Infact, upon arrival at prison the entire case file of over 7000 pages was seized and destroyed, excepting what could fit in a small bag ... It, if heard, is a defense that could affect the lives of many thousands of citizens (good citizens, who have loved this land.) ... Sixteen months into pretrial Simmons filed a suit in federal court against Judge Henry and Ms. Tibbe. The suit was accepted, and litigated "four months" simultaneously with criminal proceedings. It alleged that Judge Henry and Ms. Tibbe had deliberately allowed fabricated audio evidence be presented to the grand jury on multiple occasions, and worked to cover these facts up. The evidence was an eight minute c.D. that was fabricated from twenty-seven hours of recordings made over a four month period by Simmons.

10 These eighteen micro-cassettes were a diary made by Simmons to his eleven year old daughter, Isabella ... Ms. Tibbe denied she had the diary for sixteen months, or that it existed. She took twenty-two unrelated sentences and stacked them at will, with no two in context, or made on the same day ...

# ARGUMENT

II. . . .

10. Tibbe then made the C.D. seem to have logical flow and presented the fabricated evidence to the grand jury on two seperate occasions. Judge Henry was aware what was going on and has done nothing. . . . Only when the state Simmons surrendered in, (Missouri) sent proof Tibbe was in possession of the diary did she partially disclose parts of it — in disorder and altered condition. Missouri photographs and inventory sheets show the original condition of the damaged, altered diary (and when Tibbe took possession).

11. The diary is vital to the defense as is considerable other audio and video evidence that Tibbe still re-fuses to disclose. . . It is of Simmons while on the run in eight states. It began about two months before the fatal self-defense shot that took the life of Simmons' friend of some twenty-five years (Steven) . . . . And Tibbe hid it because it is very damaging to "her theory". Infact, when the judge allowed Tibbe's fabricated evidence into the jury room late on the day of deliberation His Honor decided that the rule of optional completeness was satisfied by allowing Tibbe to drop a tiny micro-cassette player (operating on "one" triple A battery) into a plastic bag full of eighteen micro-cassettes.

# ARGUMENT

II ..."The tapes were all mixed-up and damaged. In far worse condition than when Tibbe took possession, and Simmons was not allowed to review them... All Simmons had been given were copies, equally in disarray, on C.D. And after over a week of trying to find each of Tibbe's random sentences and documenting exactly what was said where (to show actual meanings in context)... Judge Henry refused the jury any of that work. It would have taken the jury a week to go through the tapes, and the tiny player had a speaker the "size of a quarter." Yet Tibbe's fabricated evidence on C.D. was allowed a surround-sound digital audio system... This "evidence" was probably the most damaging evidence the prosecutor had, and it changed the verdict... The audio-diary, if even partially heard would show it had only one main theme: Simmons was afraid and paranoid from years of systematic abuse. He was in trouble and wanted his little girl to understand what was happening to him, and who was bringing the misery to bear... But the jury was not allowed to hear any of it. (Only Tibbe's 8-minute fabricated C.D...)

## ARGUMENT

**II.**

12 The federal civil suit against judge Henry went on for the final months of pre-trial, on into the third day of trial. This, yet the primary rule of law on such conflicts and bias was set down over one hundred and fifty years ago in 29 USC 455, especially the subsections (a) and (b)... And His Honor's impartiality might reasonably be questioned given his actions after the first day of service. He heard many motions on the same issues at stake in both proceedings, and his decisions were so arbitrary as to utterly destroy due process and infect the trial with prejudice.

**III.**

14 Few rights are more fundamental than those of the accused to present witnesses in his own defense. Rules of court should not be applied so mechanistically as to defeat the ends of justice. CHAMBERS v. MISSISSIPPI. The right to bring witnesses in our defense so the jury may decide where the truth lies, is the very heart and soul of due process. WASHINGTON v. TEXAS. And absent proper testimony bearing on the theory of defense, the jury...

# Argument

**III.** 14 ... cannot weigh the credibility of the witnesses for the defense as compared to the other evidence in the case, and therefore cannot properly convict. UNITED STATES v. McCLURE.

15 Witness intimidation defeats due process. WEBB v. TEXAS. It is a Sixth Amendment right to allow a pro se defendant to present his version of the facts. COLEMAN v. STATE. However, allmost all the defense witnesses were obstructed from being allowed to offer testimony. Vital evidence was verifiably altered, witheld and destroyed on a large scale. Only four of thirty-four subpoenas were selectively served, and all four were friendly to the prosecution. For the nine days of trial, Ms. Tibbe was allowed eight of them. . . . Violations of privilege were quite common, and the Judge was biased by his own personal concerns regarding the four months of federal civil litigation, that His Honor was simultaneously engaged in with his criminal defendant during active criminal proceedings, including three of the nine days of trial.

**III.** 16 Some of the yet unheard relevant issues of similar magnitude as the afore-mentioned include His Honor's intimidation of the . . .

# ARGUMENT

III. ... pro se defendant's independently hired psychiatric expert. Forensic psychiatrist (Dr. R. Cantu) was hired by Simmons about three months prior to the civil action against Judge Henry. But, on the day His Honor was served by federal marshalls he contacted Dr. Cantu and ordered him to not only "abandon Simmons defensive team" but "go to work exclusively for the Judge". Doing this allowed Judge Henry to stop Dr. Cantu from his analysis of Simmons audio-tape diary to better determine state of mind at the time. Simmons had just passed a complete psychiatric analysis performed by the prosecutor's forensic psychiatrist (Dr. Coons). And both Dr. Coons and Dr. R. Cantu wished to analyze the audio-diary because entries made well-over a year prior to their tests (were made within hours of the death of the alleged victim, Steven.). Judge Henry refused to allow either forensic psychiatrist any access to the audio-diary, even though it was the best evidence of sanity available. Neither doctor was allowed to testify at trial, and their reports were not released to Simmons.

# ARGUMENT

III.

18. Jencks information on promises of leniency was deliberately witheld as was all Jencks information. False evidence was argued while Ms. Tibbe knew she had a duty to inform the court. Simmons previous treating psychiatrist was not allowed to testify as to a pre-existing condition that in itself could have seriously affected trial outcome. Jury instructions were not addressed at all on significant aspects of the defensive theory. No significant rule of law regarding the affirmative defense was respected in any real way. ... The eighteen tape diary is filled with evidence of paranoia, delusion, fear and complete confusion for twenty-seven hours, over a four month period — with only one real theme: Simmons was desperately trying to explain to his only child "why he had to flee from police and what he believed they were doing, and intended to do to him. It is clearly tied to all defensive theory, yet the jury did not hear any significant part in true context. There was no "meaningful opportunity to present a complete defense" afforded Simmons. GILMORE v. TAYLOR; CRANE v. KENTUCKY; CALIFORNIA v. TRAMBETTA.

# ARGUMENT

## III.

What the jury heard instead of a fair trial in the interests of justice, was an eight-day long inundation of fabricated and arbitrary information that invoked emotion over reason. The eight-day barrage was presented in a way designed to "wear the jury out" and push them "beyond boredom".

From there the mind simply goes numb, and with conflicting testimony eliminated, the jury begins to block-out any more information, while retaining only the specific and planned attitude implanted. Mind manipulation techniques like this were developed during times of war and are sometimes called "information overload" methods. They should find no place in an American court of law. Law is the rule of right and the dictate of reason.

## PRAYER FOR RELIEF

The petitioner respectfully prays the COURT grant him the opportunity to brief the Court of Appeals, in the interests of justice.

Respectfully Submitted:

4/15/2015.

Mark David Simmons

M. Simmons    #1775527

810 Fm 2821

Huntsville , Texas ,

77349

NORTH HOUSTON TX 773

23 APR 2015 PM 7 L

LEGAL

LEGAL

COURT OF CRIMINAL APPEALS

OF

Texas

Box 12308 Capital Station

Austin ,

78711

78711